THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TOM U. CHOE, Defendant-Appellant.

First District (1st Division)   No. 1—90—0354

Opinion filed May 26, 1992.

Sam Adam and Burch & Delgado, both of Chicago (Clarence L. Burch, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Catherine A. Hufford, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

On August 18, 1987, Julio Aguirre was murdered on North Central Park Avenue in Chicago by members of a street gang who believed him to be a member of a rival gang. Based on a photo identification by an eyewitness, police sought out defendant on September 29, 1987, at his parents' restaurant. At a police station shortly thereafter, defendant admitted to having shot Aguirre while Aguirre was restrained by two other individuals. Defendant's statement subsequently was admitted at his jury trial, and he was convicted of the murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1). Defendant was sentenced to a prison term of 60 years. He appeals.

We affirm.

Defendant first contends he was arrested illegally and, as a result, his pretrial motions to quash his arrest and to suppress his statement were denied improperly.

Chicago police detective John Enault provided testimony concerning the circumstances which led the police to defendant. Enault stated that he interviewed, among others, Gloria Santiago, in conjunction with his investigation of Aguirre's murder. Santiago witnessed the murder and described Aguirre's assailants as two Orientals and one Caucasian. All were male. Enault's reports, dated August 19 and 21, 1987, contained notes taken after interviews with Santiago. The August 21, 1987, report indicated that the gunman had worn his hair in a "spiked" style. Santiago gave police a physical description of the Oriental males.

On September 28, 1987, Santiago identified a photograph of defendant as the gunman from an array of six photographs. That photograph had been taken following defendant's arrest in an unrelated matter five days earlier. Enault explained that Santiago did not speak fluent English and that her son acted as translator when she reviewed the photographs. Based on her identification, detectives sought out defendant the following day.

Insun Manna, a waitress at defendant's parents' restaurant, testified that four detectives came looking for defendant on September 29, 1987, at the restaurant. Finding that defendant was not then present, the detectives left a business card with Manna and instructed her to have defendant telephone police upon his return. Defendant arrived at the restaurant an hour later and was advised of the police visit. The detectives also returned shortly thereafter and told defendant they wished to ask him some questions. Manna testified defendant then accompanied the police. Defendant was not handcuffed.

The testimony of defendant's brother, Peteo Choe, mirrored that of Manna.

Enault testified that, at the police station, he and his partner spoke with defendant at approximately 9:45 p.m. When Enault informed defendant that police were investigating Aguirre's murder, defendant "jumped off the chair" and began to pace, stating, "I didn't shoot anybody." Enault indicated however, that, up to that point, there had been no mention of the manner in which Aguirre had been killed. Enault then advised defendant that he had been identified through a photograph. Defendant asked if the photograph showed him as he then looked. When Enault indicated that it did, defendant stated that the identification based on the photograph had to have been erroneous because, at the time the shooting had occurred, he had worn his hair "spiked." It was at that point, Enault stated, that defendant was arrested and advised of his constitutional rights.

The circuit court ruled that defendant voluntarily accompanied police to the station. The trial judge specifically noted that, based on the testimony of the defense witnesses, there was no evidence of any coercive conduct on the part of the police at the restaurant. Indeed, defense counsel conceded that there was "nothing" to directly indicate the presence of police coercion at the time defendant left with police from the restaurant.

■■ The trial judge's determination regarding custody is fact dependant, and the resolution of that question may not be overturned by a reviewing court unless it is manifestly erroneous. (*People v. Gorman* (1991), 207 Ill. App. 3d 461, 468, 565 N.E.2d 1349, *appeal denied* (1991), 139 Ill. 2d 600, 575 N.E.2d 919.) Here, no basis exists to disturb the court's decision as there is nothing in the record to indicate that defendant did not accompany the detectives voluntarily.

■■ The circuit court further ruled that probable cause for arrest occurred when defendant implicated himself in the crime.

The question of whether probable cause exists is a commonsense, practical question to be determined by the totality of the circumstances. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) Generally, probable cause exists when the circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe an offense has been committed and that the person arrested committed the offense. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) Only where a finding of probable cause constitutes manifest error will a reviewing court reverse the circuit court's ruling. *People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.

As noted above, defendant implicated himself by revealing, almost immediately to police, certain factual material which he could have garnered only by having prior knowledge of the murder. Accordingly, the trial judge's decision was not manifestly erroneous.

■ Defendant also contends Enault's testimony at trial was admitted improperly in view of Santiago's equivocation regarding her identification of defendant.

At trial, Santiago did not make an in-court identification of defendant as the gunman. However, she testified that after looking through photographs shown to her by Enault, she had "found a man similar" to defendant and showed the photo to Enault, indicating that the gunman resembled the subject pictured. Detective Enault then testified that he showed Santiago an array of photos, which she studied. She then took defendant's photograph from the array and responded affirmatively when Enault asked her if defendant was the gunman.

We find that defendant has waived the opportunity to take issue with Enault's testimony regarding Santiago's identification. Defendant failed to object to Enault's testimony at trial and did not include the issue in his post-trial motion for a new trial. Either of those failures is fatal to the preservation of that claim for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) We find no reason to excuse defendant's waiver here under the limited plain error exception. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

■ Finally, defendant contends the trial judge committed reversible error by allowing the State to question defendant regarding gang affiliation and activity. At trial, defendant had denied being a gang member. The State attempted to rebut that denial with the testimony of Chicago police officer Greg Bella, who stated that defendant had admitted he had endured the initiation rite of, and was affiliated with, a particular street gang.

Evidence of a defendant's involvement in gang activity is regarded as prejudicial for the reason that such evidence may lead to the defendant's conviction "merely because of his membership in an organization that is unpopular." (*People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840.) The trial judge must weigh the probative value and prejudicial effect of evidence in determining whether it should be admitted. (*People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.) Evidence will be admissible, however, if it is relevant to other issues such as motive, knowledge, criminal intent, or identity. (*People v. Sadaka* (1988), 174 Ill. App. 3d 260, 263, 528 N.E.2d 283.)

The ruling regarding admissibility will not be reversed absent a clear abuse of discretion. *People v. Shum*, 117 Ill. 2d at 353.

Here, the trial judge ruled that the probative value of the evidence outweighed its prejudicial effect due to defendant's "blanket denial" of gang affiliation. Moreover, Officer Bella's testimony was relevant to the crime charged (see *People v. Hairston*, 46 Ill. 2d at 372), and it established motive (see *People v. Ayala* (1990), 208 Ill. App. 3d 586, 592, 567 N.E.2d 450; *People v. Rivera* (1986), 145 Ill. App. 3d 609, 618, 495 N.E.2d 1088). The trial judge did not err in allowing the testimony.

We therefore affirm defendant's conviction.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.